# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## NORTHERN DIVISION

| | |
|---|---|
| PATTY FISCHER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Case No. 2:19 CV-00069-NCC |
| ANDREW M. SAUL, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Patty Fischer ("Plaintiff") Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 9), Defendant has filed a brief in support of the Answer (Doc. 10), and Plaintiff has filed a reply brief (Doc. 11). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 5).

## I. PROCEDURAL HISTORY

Plaintiff filed her application for DIB on November 4, 2016 (Tr. 193-94). Plaintiff was initially denied on December 27, 2016 (Tr. 116), and Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ") on January 18, 2017 (Tr. 130-31). After a hearing, by decision dated November 7, 2018, the ALJ found Plaintiff not disabled (Tr. 29). On June 28, 2019, the Appeals Council denied Plaintiff's request for review (Tr. 1-7). As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2017 (hereinafter "the insured period"), and that Plaintiff has not engaged in substantial gainful activity since September 19, 2016, the alleged onset date (Tr. 18).  The ALJ found Plaintiff has the severe impairments of lumbar spinal stenosis with history of multiple surgical interventions, diabetes mellitus, and obesity (Tr. 19).  The ALJ concluded that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 22).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[1] with the following limitations (Tr. 23).  She can stand and/or walk for two hours in an eight-hour workday (*Id.*).  She can occasionally stoop, kneel, crouch, or crawl (*Id.*).  She can occasionally climb ramps or stairs, but cannot climb on ropes, ladders, or scaffolds (*Id.*).  She should avoid even moderate exposure to work hazards such as unprotected heights and being around dangerous moving machinery (*Id.*).

The ALJ found Plaintiff capable of performing past relevant work as a telephone sales representative as generally performed, as this work did not require the performance of work-related activities precluded by the Plaintiff's RFC (Tr. 28).  Thus, the ALJ concluded that a

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

finding of "not disabled" was appropriate (Tr. 29). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision (Doc. 9 at 6-7).

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to

establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000).  *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).  *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox*, 495 F.3d at 617.  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to

support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the evidence is a function of the ALJ, who is the fact-finder.  *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004).  Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently.  *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues.  First, Plaintiff argues that the ALJ erred in failing to give proper weight to the opinion of Dr. Stephen Halpin, M.D. ("Dr. Halpin"), Plaintiff's treating physician[2] (Doc. 9 at 6-7).  Second, Plaintiff asserts that the ALJ's RFC determination is not supported by substantial evidence primarily because the ALJ gave improper weight to Dr. Halpin's Medical Source Statement and overly relied on the opinion of a non-examining, non-treating state agency medical consultant (*Id.* at 10-12).  For the following reasons, the Court finds that the ALJ committed reversable error in her failure to appropriately evaluate the medical opinion evidence of record.

The ALJ's assessment of the medical opinion of Plaintiff's treating physician is not supported by substantial evidence.  "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir.

---

[2] The parties do not dispute that Dr. Halpin is Plaintiff's treating physician (*See* Doc. 9 at 7-8; Doc. 10 at 9).

5

2016) (internal quotations omitted).  *See also* 20 C.F.R. §§ 404.1527(c), 416.927(c); [3] *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015).  "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'"  *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)).  In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion.  20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2).  Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so.  *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

Dr. Halpin completed a Medical Source Statement ("MSS") of Ability to Work-Related Activities (Physical) on September 25, 2017 (Tr. 809-14).  Dr. Halpin found Plaintiff could lift a maximum weight of 20 pounds, could frequently lift 10 pounds, could stand/walk less than two hours out of an eight-hour workday, and could sit without limitation (Tr. 809).  Additionally, Dr. Halpin opined that Plaintiff could walk for more than 90 minutes before needing to change positions, and the Plaintiff could stand for ten minutes before needing to change positions (*Id.*).  Dr. Halpin opined that Plaintiff would need to walk around four times per workday for ten minutes at a time, and that she would need to be able to shift at will and lie down at unpredictable intervals (*Id.*).  In support of this opinion, Dr. Halpin noted Plaintiff's issues with Fibromyalgia, Osteoarthritis, Heberden's Nodules, and a tremor in her left hand (*Id.*).

---

[3] Under current regulations, a treating physician's opinion is entitled to no special deference.  *See* 20 C.F.R. § 404.1520c(c).  These regulations were effective as of March 27, 2017.  20 C.F.R. § 404.1527.  However, Plaintiff's claim was filed on December 18, 2015, so the old regulations apply.  *See id.*

In assessing Plaintiff's postural limitations Dr. Halpin noted that Plaintiff could twist, stoop, and climb stairs occasionally; and could never crouch or climb ladders (Tr. 810). Dr. Halpin opined that these postural limitations were based on a combination of subjective limitations from the Plaintiff and as a result of her obesity (*Id.*). In assessing Plaintiff's manipulative functions, Dr. Halpin indicated that Plaintiff could feel constantly, that she could handle frequently, and that she could reach, finger, push/pull, and use upper and lower extremities occasionally (*Id.*). Dr. Halpin supported this portion of his MSS by noting Plaintiff's issues with Osteoarthritis, especially in her index fingers, and her Heberden Nodules in the joints of her hands, especially her second and third fingers (*Id.*). Dr. Halpin opined that Plaintiff would on average be 25% off task as a result of her disabilities (Tr. 811-12). Dr. Halpin further indicated that he believed Plaintiff would miss four days of work per month by due to her "chronic fatigue" and "pain/paresthesias/numbness" (*Id.*).

The ALJ afforded Dr. Halpin's opinion "limited weight" (Tr. 27). Specifically, the ALJ found Dr. Halpin's September 25, 2017 MSS to be unsupported by the record as it related to, among other impairments, Plaintiff's Osteoarthritis, Heberden's Nodules, and tremors in her left hand (Tr. 19-20). By giving "limited weight" to Dr. Halpin's opinion the ALJ determined that these impairments were not medically determinable during the insured period (*Id.*). The ALJ similarly concluded that Dr. Halpin's opinions regarding Plaintiff's need for additional breaks, being 25% off task during the workday, and her ability to only "occasionally" finger, reach, or use her extremities to be unsupported by objective evidence (Tr. 27).

The Court finds the ALJ did not provide "good reasons" for assigning Dr. Halpin's opinion "limited weight." *Prosch*, 201 F.3d at 1013. First, The ALJ's assessment of treating relationship between Plaintiff and Dr. Halpin as "primarily focused on monitoring her diabetes"

7

was misleading (Tr. 20).  Dr. Halpin had an extensive treatment relationship with the Plaintiff for three years between 2015 and 2018 and saw Plaintiff on a regular basis during this time (*See generally* Tr. 515-721, 972-1151).  20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").[4]  Dr. Halpin was involved in Plaintiff's routine care such as coughs (*E.g.,* Tr. 541), urinary issues (*E.g.,* Tr. 629), and ingrown toenails (*E.g.,* Tr. 653).  At the same time, Dr. Halpin provided treatment to Plaintiff for her more serious issues such as her chronic back pain (*E.g.,* Tr. 542, 547, 686), sleep apnea (*E.g.,* 560), fibromyalgia (*E.g.,* Tr. 590), diabetes (*E.g.,* Tr. 620-21), and others.  It is a misrepresentation of Plaintiff's relationship with Dr. Halpin to say that it was "primarily focused on monitoring her diabetes" given how involved he was in both her routine and more serious care (Tr. 20).

Second, Dr. Halpin's opinion is consistent with the medical record as a whole.  As it relates to Plaintiff's Osteoarthritis and Heberden's Nodules, the ALJ dedicated only one short paragraph elsewhere in the decision to evaluating these impairments (*See* Tr. 20).  Largely relying on her analysis of Dr. Halpin's opinion, the ALJ found "Heberden's nodules/osteoarthritis of the hand was not a medically determinable impairment prior to September 30, 2017, the [Plaintiff's] date last insured" (*Id.*).  Dr. Halpin's opinion on Plaintiff's ability to reach, finger, and use her upper extremities are dispositive in this case because Vocational Expert Christie Wilson ("VE") testified at Plaintiff's hearing that if reaching,

---

[4] This rule applies only to claims filed before March 27, 2017.  *Compare* 20 C.F.R. § 404.1527, *with* 20 C.F.R. § 404.1520c.

fingering, and the use of upper extremities were limited to "occasionally" that all of Plaintiff's past jobs would be eliminated (Tr. 95-96, 100-101).

The ALJ only directly mentions Plaintiff's Osteoarthritis in the concluding sentence of her short analysis, "Heberden's nodules/osteoarthritis of the hands was not a medically determinable impairment prior to . . . [Plaintiff's] date last insured" (*Id.*).  Preceding this conclusion, the ALJ only explicitly discusses the medical determinability of Plaintiff's Heberden Nodules (*Id.*).  Given this, it is unclear how the ALJ supports the conclusion that Plaintiff's Osteoarthritis is not a determinable medical impairment during the insured period, nor is it clear how the ALJ supports giving Dr. Halpin's opinion "limited weight" on this issue (Tr. 20, 27).  The Court does not claim medical expertise, but it is clear from even cursory research that while Osteoarthritis and Heberden Nodules have a causal relationship, they are not the same ailment and should have been evaluated separately.[5]

The ALJ, instead, improperly relied on Plaintiff's 2016 Function Report and the absence of diagnostic imaging of Plaintiff's hands to conclude that Plaintiff's Osteoarthritis and Heberden's Nodules were not medically determinable impairments during the insured period (Tr. 20).  While, as correctly noted by the ALJ, Plaintiff did not indicate any limitations with using her hands in the 2016 Report, considering the medical evidence in the record, this relatively small inconsistently is not a good reason to discredit Dr. Halpin's findings (Tr. 20, 247).  *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)) ("Whether the ALJ grants a treating

---

[5] Heberden nodes are "exostoses about the size of a pea or smaller, found on the terminal phalanges of the fingers in *osteoarthritis*, which are enlargements of the tubercles at the articular extremities of the distal phalanges."  Stedman's Medical Dictionary, 606390 (2014) (emphasis added).  *See also* Robert M. Stecher et al., *Heberden's nodes: The family history and radiographic appearance of a large family*, 5 Am. J. Hum. Genet. 46, 46 (1953), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC1716453/pdf/ajhg00416-0052.pdf ("Heberden's nodes are enlargements of the terminal joints of the fingers due to osteoarthritis").

9

physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation."). Further, the ALJ's statement that "[t]here has been no diagnostic imaging of [Plaintiff's] hands" is incorrect (Tr. 20).  After suffering a fall, Plaintiff received x-ray imaging of her hands on March 19, 2015 from Dr. Christopher M. Bieniek ("Dr. Bieniek") (Tr. 506).  This imaging showed that Plaintiff had "a mild radiocarpal joint and STT joint DJD, osteoarthritis" (*Id.*).  After reviewing the x-rays and conducting a physical examination of Plaintiff, Dr. Bieniek diagnosed Plaintiff with a "Contusion, Left Hand and Asymptomatic Radiocarpal Joint, STT joint DJD" (*Id.*).  DJD, or Degenerative Joint Disease, is another name for Osteoarthritis.[6]

      Regardless, the medical record as a whole does not support the limited weight afforded Dr. Halpin's opinion as it relates to Plaintiff's Osteoarthritis.  The record is replete with notations of "General Osteoarthritis" and "Localized Osteoarthritis, Left Hand" going back to at least February 9, 2015 (Tr. 550, 562, 570, 574, 580, 588, 592, 600, 604, 608, 620, 624, 641, 652, 666, 672, 676, 683, 690, 694, 699, 711).  Plaintiff's medical record also indicates Osteoarthritis in the hand on February 9, 2015, which predates her x-rays (Tr. 550).  A review of Plaintiff's musculoskeletal system by Dr. Humam Farah, M.D. on February 15, 2015, that same week, states Plaintiff has, "trigger finger, carpal tunnel and arthritis" (Tr. 559).  Given this, it is possible Plaintiff's issues regarding Osteoarthritis began before the fall of 2015, but it is unclear from the record and warranted further discovery.  Also notable, yet unmentioned by the ALJ, Plaintiff has taken Omega 3-6-9 since at least 2015 and through the insured period in 2017 (*E.g.,*

---

[6] "Osteoarthritis, Also called: Degenerative joint disease [DJD] . . . is the most common form of arthritis.  It causes pain, swelling, and reduced motion in your joints. It can occur in any joint, but usually it affects your hands, knees, hips or spine." MedlinePlus, *Osteoarthritis*, U.S. National Library of Medicine, https://medlineplus.gov/osteoarthritis.html (last visited July 23, 2020).

10

Tr. 550, 1130). This medication is often prescribed to treat the symptoms of rheumatoid arthritis.[7]

Similarly, the Court finds the ALJ's assessment of Dr. Halpin's opinion regarding Plaintiff's Heberden's Nodules unavailing. Specifically, the ALJ noted that there was no contemporaneous observation of Plaintiff's Nodules during her September 25, 2017 doctor's appointment, the same day that Dr. Halpin filled out Plaintiff's MSS (Tr. 20) (citing Tr. 1130); that Plaintiff's only complaint of index finger pain in the record was regarding a spider bite (Tr. 20) (citing Tr. 1107-1110); and that Dr. Halpin did not observe Plaintiff's Heberden's Nodules in his treatment notes until April of 2018 (Tr. 20) (citing Tr. 1164). Indeed, Plaintiff's September 25, 2017 appointment was to address urinary issues unrelated to her alleged Heberden's Nodules (Tr. 1130). However, considering the numerous chronic health conditions Plaintiff suffers from it would be impractical to expect Dr. Halpin, or any physician, to comment on every medical issue a patient has every visit. Plaintiff also has an extensive and well documented history of sleep apnea and diabetes, but these issues were not addressed on the visit in question either; this does not mean that Plaintiff no longer suffers from sleep apnea or diabetes (*E.g.,* Tr. 556, 621). Regardless, as addressed in more detail above, there is substantial evidence in the record that Plaintiff suffers from pain in her fingers. Plaintiff's history of Osteoarthritis, as undiscussed by the ALJ, would seem to provide further support to Dr. Halpin's opinion given the causal relationship between the diseases.[8] Contrary to the ALJ's assertion, Dr. Halpin's later notations in April of 2018 seem to be supportive earlier MSS observations were correct (Tr. 1164).

---

[7] *See* National Center for Complementary and Integrative Health, *Omega-3 Supplements: In Depth*, National Institute of Health, https://www.nccih.nih.gov/health/omega3-supplements-in-depth (last visited July 23, 2020) ("Omega-3 fatty acids are said to alleviate rheumatoid arthritis symptoms such as pain and stiffness as well as protect patients from joint damage").
[8] *See supra* note 5.

11

The ALJ also does not sufficiently address Dr. Halpin's opinion regarding Plaintiff's tremors.  The ALJ provided two reasons for providing limited weight to Dr. Halpin's opinion on this issue.  One, the ALJ noted that Plaintiff's Licensed Clinical Social Worker ("LCSW") was not an acceptable source for establishing a medically determinable impairment.  Two, the ALJ took issue with the absence of tremor notations during a contemporaneous doctor's appointment the same day the MSS was filled out, September 25, 2017 (Tr. 19-20).  As addressed previously, the ALJ's argument that "[Dr. Halpin's] contemporaneous examination . . . noted no tremor" is unconvincing as a reason to discredit Dr. Halpin's MSS findings (Tr. 20).

While the ALJ is correct that the observations of tremors by Plaintiff's LCSW, Ms. Sharon Denice Head ("Ms. Head"), were insufficient to establish a medically determinable impairment on their own, Ms. Head's independent observations are supportive of Dr. Halpin's MSS findings of a tremor (*See* Tr. 854, 884, 900, 916, 921, 946).  For example, on January 10, 2018 Ms. Head noted that, "Patti has increased shaking in her extremities[,] and she was relying more on her cane to assist her with mobility session" (Tr. 916).  The record also indicates that Plaintiff has discussed her family history of tremors with both Ms. Head and Dr. Halpin (Tr. 900, 1121).  Furthermore, by acknowledging the existence of Plaintiff's tremors on December 8, 2017 the ALJ seems to assert that Plaintiff did not have a tremor on the date last insured, but that she did two months later on December 8, 2017 without providing any support for this proposition (*See* Tr. 20) (citing Tr. 974).

Of note, the ALJ also fails address other significant information regarding Plaintiff's tremors, specifically Plaintiff's use of Wellbutrin.  On the same December 8, 2017 doctor's appointment cited by the ALJ, Dr. Halpin theorized that the Wellbutrin may be the culprit of the tremors (Tr. 974).  On April 4, 2018 during a counseling session with Ms. Head, Plaintiff also

12

suggested that her Wellbutrin was causing her tremors and that she needed to get off of it (Tr. 946).  Upon review of the record, it is clear that most of Plaintiff's tremor complaints began after Wellbutrin first appeared in her medical record on September 25, 2017 (Tr. 1130).  The absence of this evidence in the ALJ's opinion underscores the need for further evaluation of the record. When considering Plaintiff's sworn testimony at her hearing that she suffers from tremors (Tr. 81), Ms. Head's observations (Tr. 854, 884, 900, 916, 921, 945), Dr. Halpin's MSS (Tr. 809), Dr. Halpin and Plaintiff's discussion of Plaintiff's family history of tremors (Tr. 900, 1121), and the ALJ's acknowledgement of a formal diagnosis on December 8, 2017 (Tr. 20) (citing Tr. 974), the ALJ has not provided sufficient reasons for discounting Dr. Halpin's opinion on this point.

Additionally, the ALJ does not sufficiently explain her reasons for discounting Dr. Halpin's opinion regarding Plaintiff's manipulative limitations (Tr 27).  The ALJ provides only one conclusory sentence in support of this assertion, "[Dr. Halpin had not] treated her for related impairments or observ[ed] in his treatment notes any limitation of her upper extremities." (*Id.*). Contrary to the ALJ's assertion, Dr. Halpin has treated Plaintiff for several manipulative-related impairments.  In addition to Plaintiff's Osteoarthritis and Heberden's Nodules, as addressed in more detail above, Dr. Halpin treated Plaintiff for her fractured wrist and for her physical issues following her car crash including a "very painful range of motion" in her left shoulder (Tr. 571, 685-86).

Finally, the ALJ did not sufficiently address her reasons for discounting Dr. Halpin's opinion that Plaintiff would need to lie down periodically during her shift, be 25% off task during the workday, or her likely being absent four days per month (Tr. 27, 811-12).  The VE testified that if Plaintiff was off task more than 15% of the workday that jobs would be

13

eliminated, and that extra breaks would not be tolerated, and would be considered a special accommodation by employers (Tr. 97).  The ALJ's only support for discounting Dr. Halpin's opinion on this point is the single conclusory statement, "[there was] no objective support for these limitations" (Tr. 27).  In addition to the evidence already discussed previously with regard to Plaintiff's Osteoarthritis, Heberden's Nodules, and tremors, additional relevant evidence not considered by the ALJ suggests Plaintiff would need to lie down periodically during her shift and would need to be off task for a period of time each day.  Plaintiff received physical exams between October 1, 2015 and August 9, 2016 from Dr. Cynthia Hess ("Dr. Hess") addressing her back and pelvic pain (Tr. 365-89).  Dr. Hess listed the causative factors for Plaintiff's back pain as, "rising from seated position, prolonged sitting . . ." Relieved by, "activity (walking)" (Tr. 366).  Causative factors for Plaintiff's pelvic pain include "sitting, standing, standing from sitting position, stepping on affected leg and walking." Relieved by, "rest" (*Id.*).

Third, Dr. Halpin's opinion is consistent with Plaintiff's subjective limitations and reported activities of daily living.  The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record" (Tr. 24).  However, the Court also finds the ALJ's failed to give sufficient treatment to Plaintiff's subjective limitations.  As an example, the ALJ does not provide much explanation why Plaintiff's subjective reports of pain and her need to use a cane, walker, and "grabber" are inconsistent with the record (Tr. 23, 27-28).  The ALJ simply reiterates that these devices, especially her cane and walker, were not medically prescribed to her and that "nor does there appear a medical need for her to use a walker, cane, or 'grabber'" (Tr. 23, 27-28).  While it is the

14

Plaintiff's burden to establish the medical need for assistive mobility devices, given Plaintiff's extensive history with back pain, more treatment of this issue appears warranted (Tr. 27, 242-43, 916, 1077).  *See* Social Security Ruling (SSR) 96-9p, 1996 WL 374185, at *7 (S.S.A. 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, . . . .").  It seems clear that the Plaintiff subjectively felt the need to use these devices in light of her pain and mobility issues, and more attention should have been given to these statements and observations.

On a similar vein, the Court notes that the ALJ's framing of Plaintiff's day to day capabilities seems exaggerated.  The ALJ states that Plaintiff was "preparing simple meals, performing light household chores, going shopping, reading, watching television, doing puzzles, socializing with friends and family, walking, and driving" as evidence that Plaintiff's abilities were consistent with the RFC (Tr. 26-27).  The ALJ denied that Plaintiff's reports of resting in her lift chair, napping, and performing household chores only for ten minutes were supported by objective medial evidence (Tr. 27).  However, for example, the ALJ's generalized statement that Plaintiff can drive does not mention that she only does so once per week to see her doctor, and regularly has anxiety and flashbacks while driving since her crash (*See, e.g.,* Tr. 72, 931).

In sum, the ALJ did not provide "good reasons" for assigning the opinion of Dr. Halpin "limited weight" in determining Plaintiff's RFC.  Thus, remand is required.  *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574-DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's

15

opinion, the district court must remand."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

Additionally, the Court finds that the ALJ inappropriately relied on the opinion of a state agency medical consultant. "[B]ecause nonexamining sources have no examining or treating relationship with [the claimant], the weight we will give their medical opinions will depend on the degree to which they provide supporting explanations for their medical opinions." 20 C.F.R. § 416.927(c)(3). *See also Papesh*, 786 F.3d at 1133. "[O]pinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Lillard v. Berryhill*, 376 F. Supp. 3d 963, 985 (E.D. Mo. 2019).

In assessing Plaintiff's RFC, state agency medical consultant Joann Mace, M.D. ("Dr. Mace") found that Plaintiff's exertional limitations were to occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand/or walk for a total of two hours; sit for six hours out of an eight hour workday; and push and/or pull an unlimited amount (Tr. 112). Plaintiff's postural limitations included an unlimited ability to climb ramps/stairs and balance; a frequent ability to climb ladders/ropes/scaffolds; and an occasional ability to stoop, kneel, and crouch (*Id.*). Dr. Mace indicated that Plaintiff had no manipulative, visual, or communicative limitations (Tr. 113). Dr. Mace indicated that Plaintiff had no environmental limitations other than to avoid even moderate exposure to hazards (machinery, heights etc.) (*Id.*).

The ALJ afforded the opinion of Dr. Mace "mostly great weight" (Tr. 27). In doing so, the ALJ found, "Dr. Mace reviewed the objective evidence of the record" and "Dr. Mace is an expert in disability evaluation" (Tr. 27). However, Dr. Mace's RFC in large part does not

contradict the findings of Dr. Halpin. (*See id.*).  The ALJ notes in her opinion that Dr. Mace found Plaintiff had "no limitation . . . in manipulative activities" (Tr. 27).  Other than this vague conclusion, Dr. Mace's opinion does not clearly contradict Dr. Halpin's MSS as it does not specifically address Plaintiff's ability to reach, finger, use her upper extremities, or any of the other contested limitations opined in Dr. Halpin's MSS (Tr. 111-14).  Additionally, unlike Dr. Halpin, Dr. Mace was not Plaintiff's treating physician and did not physically examine her.  For these reasons it was inappropriate to rely almost exclusively on the opinion of Dr. Mace (*See* Tr. 111-15).  20 C.F.R. § 416.927(c)(3).  *See Lillard*, 376 F. Supp. 3d at 985.  Therefore, the Court finds that the ALJ failed to appropriately evaluate the opinion evidence of record and her RFC determination is not supported by substantial evidence.

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded.  On remand, the ALJ is directed to conduct an appropriate analysis of Dr. Stephen Halpin's medical opinion; obtain a medical opinion from Plaintiff's current primary care physician; further develop the medical record; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 4th day of September, 2020

                                                          /s/ Noelle C. Collins
                                                    NOELLE C. COLLINS
                                                    UNITED STATES MAGISTRATE JUDGE